**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION**

**ANTHONY EZRA WILSON,**

        **Plaintiff,**

**v.**                                     **Civil Action No. 2:11-cv-6**

**B.K. LANHAM, et al.,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT REGARDING ALL
<u>REMAINING CLAIMS FOR ALL REMAINING DEFENDANTS [72]</u>**

**<u>I.</u>**     **<u>INTRODUCTION</u>**

On January 20, 2011, *pro se* Plaintiff Anthony Ezra Wilson ("Plaintiff") filed a Complaint

initiating this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1 ("Complaint").) In the

Complaint, Plaintiff alleges that Defendants used excessive force against him on four separate

occasions in violation of his constitutional rights. At the time he filed his Complaint, Plaintiff paid

the full filing fee of $350. (ECF No. 2.) A day later, the undersigned issued a Rule 4(m) Notice,

advising Plaintiff of the service requirements of the Federal Rules of Civil Procedure. (ECF No. 4.)

That same day, the Clerk of Court issued summonses for Defendants (ECF No. 5), and on February

3, 2011, Plaintiff filed what purports to be proof of service of the summonses (ECF No. 8).

On February 22, 2011, Defendants filed a Motion for Summary Judgment (ECF No. 9) and

Memorandum in Support (ECF No. 10). Because Plaintiff is proceeding *pro se*, the undersigned

issued a *Roseboro* Notice advising Plaintiff of his right to respond to Defendants' motion on

February 14, 2011. (ECF No. 11.) Plaintiff filed his response opposing Defendants' motion on

March 15, 2011. (ECF No. 13.) Defendants filed their reply to Plaintiff's response on March 25,

2011.  (ECF No. 18.)

On April 4, 2011, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (ECF No. 20.)  Therefore, on April 5, 2011, the Honorable John Preston Bailey, Chief United States District Judge, referred this case to the undersigned for all further proceedings. (ECF No. 22.)

Plaintiff filed a Motion for Leave to File an Amended Complaint on April 8, 2011.  (ECF No. 27.)  He also filed a Motion to Release Evidence.  (ECF No. 28.)  Defendants filed their responses to these motions on April 22, 2011.  (ECF Nos. 31, 32.)  Plaintiff filed a Motion for Summary Judgment on May 6, 2011.  (ECF No. 41.)  Defendants filed their response to this motion on May 25, 2011.  (ECF No. 48.)

On May 26, 2011, the Court issued an Order directing the parties to clarify the dates of the alleged use of excessive force and what, if any, video footage was available of those events.  (ECF No. 50.)  Plaintiff filed his response to that Order on June 9, 2011 (ECF Nos. 53-54) and Defendants filed their response on June 9, 2011 (ECF No. 55.)  Plaintiff filed a reply to Defendants' response on June 22, 2011.  (ECF No. 56.)

On June 27, 2011, the undersigned entered an Order denying Plaintiff's Motion to Amend and Plaintiff's Motion for Summary Judgment and granting Defendants' Motion for Summary Judgment with respect to defendants Hoke and Rubenstein and Plaintiff's claims of verbal harassment.  (ECF No. 57.)  However, the undersigned denied Defendants' Motion for Summary Judgment as to all other defendants and Plaintiff's claims alleging excessive force and retaliation. (*Id.*)  A day later, the undersigned entered an Order dismissing Warden Hoke and Commissioner Rubenstein as defendants.  (ECF No. 58.)

On July 1, 2011, Defendant Steve Hyre filed a counterclaim against Plaintiff for personal injuries caused on July 1, 2010 by an assault and battery. (ECF No. 59.) On July 13, 2011, the remaining Defendants filed an Answer to Plaintiff's Complaint. (ECF No. 61.) On August 8, 2011, the undersigned entered a First Order and Notice Regarding Discovery and Scheduling, directing that all discovery be fully served and completed within 120 days from the entry of the Order. (ECF No. 66.) The remaining Defendants filed a certificate of service for their first set of interrogatories and requests for production of documents to Plaintiff on August 16, 2011. (ECF No. 68.)

On December 6, 2011, Defendant Hyre filed a Request for Entry of Default against Plaintiff because Plaintiff had not made any response, answer, or pleading to the counterclaim filed by Defendant Hyre in more than twenty-one days. (ECF Nos. 69, 70.) On December 7, 2011, the Clerk of Court entered default judgment against Plaintiff. (ECF No. 71.)

On December 30, 2011, the remaining Defendants filed a Motion for Summary Judgment Regarding All Remaining Claims for All Remaining Defendants (ECF No. 72 ("Mot.")) as well as a Memorandum in Support (ECF No. 73 ("Memo. in Supp.")). Because Plaintiff is proceeding *pro se*, the undersigned issued a *Roseboro* Notice advising Plaintiff of his right to respond to Defendants' motion on January 11, 2012. (ECF No. 74.) Plaintiff responded to Defendants' motion on January 26, 2012 (ECF No. 76 ("Resp.")), and Defendants filed a reply to Plaintiff's response on February 8, 2012 (ECF No. 77 ("Reply")).

On May 18, 2012, the undersigned entered an Order directing the remaining Defendants to file a copy of a video dated August 14, 2010 under seal with the Court within ten days for an *in camera* review to assist in preparing this current Order. (ECF No. 78.) The undersigned received the video on May 31, 2012. (ECF No. 81.) The undersigned's Order also directed Defendants to

file a supplement to their motion for summary judgment within twenty-one days to include copies

of Plaintiff's medical records dating from July 1, 2010 through the end of the 2010 calendar year

. (*Id.*)  On June 28, 2012, Defendants filed a motion for an additional twenty days in which to file

Plaintiff's medical records (ECF No. 82), and the undersigned granted this motion by Order dated

July 2, 2012 (ECF No. 83).  Defendants produced Plaintiff's medical records on July 18, 2012.

(ECF No. 85.)  This case is now before the undersigned for an Order on Defendants' Motion for

Summary Judgment Regarding All Remaining Claims for All Remaining Defendants.

## II.   CONTENTS OF THE PARTIES

### A.   *The Complaint*

In his Complaint, Plaintiff alleges that Defendant Doug White used excessive force against

him on August 11, 2010 and August 14, 2010, while some of the other Defendants encouraged the

attacks or later covered them up.  (Complaint at 4.)  He further contends that on August 4, 2011,

Defendants Mike Smith, Brad Warner, James White, and Sergeant Haynes also assaulted him.  (*Id.*)

According to Plaintiff, these assaults were a direct result of another incident which occurred on July

1, 2010, where he was "jumped" and strapped to a table by Corporal Hyre.  (*Id.* at 5.)  Plaintiff

asserts that as a result of the July 1, 2010 attack on him, both he and Corporal Hyre were injured,

and that the other guards began to target and harass him because of this incident.  (*Id.*)

### B.   *Defendants' Motion for Summary Judgment*

In their Motion, Defendants assert that Plaintiff's claims regarding the August 11, 2010

incident must be dismissed because he failed to file a grievance related to these allegations.  (Mot.

at 1; *see also* Memo. in Supp. at 6-7.)  Defendants also claim that no genuine issue of fact exists

because Plaintiff failed to produce any evidence during discovery to support his claims.  (Mot. at

1; *see also* Memo. in Supp. at 7-8.)  Defendants further allege that res judicata bars Plaintiff's claims against Corporal Hyre and that collateral estoppel bars Plaintiff's claims against the remaining Defendants.  (Mot. at 1-2; *see also* Memo. in Supp. at 8-10.)  Finally, Defendants argue that Plaintiff's injuries were only *de minimis*, that they are entitled to qualified immunity, and that Plaintiff has not created a question of fact regarding his retaliation claim.  (Mot. at 2; *see also* Memo. in Supp. at 10-11.)

### C.    Plaintiff's Response

In his response, Plaintiff asks the Court to deny Defendants' motion for summary judgment because he believes that "any dismissal of this case before [his] accusations were even looked into would be very unfair to [him] and any chance [he] ha[s] for justice."  (Resp. (alterations in original).)  He asserts that he filed his suit "to have an outside investigation into the way [he] was mistreated and then lied on by the officers [sic] named in this suit."  (*Id.* (alterations in original).)

### D.    Defendants' Reply

In their reply, Defendants assert that Plaintiff has failed to meet the standard for opposing a motion for summary judgment because Plaintiff failed to conduct discovery and produce anything that would support his claims or create a question of fact.  (Reply at 1-3.)  Defendants also allege that they have met their burden for summary judgment by the use of affidavits, exhibits, other evidence, and legal authority.  (*Id.* at 3-7.)

### III.    STANDARD OF REVIEW

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Motions for summary judgment impose a difficult standard on the moving party

because it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex*, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Id.* at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.   ANALYSIS

### A.   *Plaintiff's Claims of Excessive Force*

#### 1.   Plaintiff Exhausted His Administrative Remedies for His Claim Regarding August 11, 2010

As their first ground for relief, Defendants assert that Plaintiff's claim regarding the incident allegedly occurring on August 11, 2010 should be dismissed for his failure to exhaust his administrative remedies while he was incarcerated.   (Memo. in Supp. at 6.)   According to Defendants, Plaintiff did not utilize the West Virginia Division of Corrections' ("WVDOC") grievance process for his allegations.   (*Id.*)   However, the undersigned finds this contention to be without merit because Plaintiff did exhaust his administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.   42 U.S.C. § 1997(e)(a).   Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. *Booth v. Churner*, 532 U.S. 731, 741 (2001).   Because exhaustion is a prerequisite to bringing suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) (emphasis added) (citing *Booth*, 532 U.S. at 741).

Moreover, in *Woodford v. Ngo*, 548 U.S. 81, 93-94(2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate

---

[1]   *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."  Therefore, the PLRA exhaustion requirement requires *full* and *proper* exhaustion.  *Id.* at 92.  Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  *Id.* at 103.

In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint.  However, that decision does not abrogate the fact that an action under 42 U.S.C. § 1983 is subject to exhaustion of administrative remedies as required by the PLRA.  Nor does it abrogate well-established Fourth Circuit precedent which allows the Court to summarily dismiss a complaint in which the failure to exhaust is clearly evident.  *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 682 (4th Cir. 2005).

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues.  The first level involves filing a G-1 Grievance Form with the Unit Supervisor.  If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator.  Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

Here, Plaintiff did file a grievance related to the incident he alleges occurred on August 11, 2010.  Warden Adrian Hoke noted that Plaintiff never filed a "grievance regarding any incident

involving Officer White or any other officer for the date of August 11, 2010." (Mem. in Supp., Ex. C ("Hoke Aff.").)  However, Plaintiff has attached a WVDOC Inmate Grievance Form to his Complaint that details an incident occurring on August 11, 2010.  (Complaint, Ex. 11 ("Aug. 11 Incident Form").)  Although this form is dated August 18, 2010, Plaintiff describes an incident involving Officers White and Fox on August 11, 2010.  (*Id.*)  His grievance was denied at the unit manager level on August 23, 2010.  (*Id.*)  Warden Hoke affirmed the unit manager's denial on August 24, 2010, and the Commissioner of the DOC affirmed the denial on September 2, 2010. (*Id.*)  Therefore, Plaintiff exhausted the three-level process with regards to his allegations concerning August 11, 2010.

### 2.    Application of Res Judicata To Plaintiff's Claims of Excessive Force

To support their motion for summary judgment, Defendants assert that the doctrine of *res judicata* bars Plaintiff's claims against Corporal Hyre.  (Mot. at 1; *see also* Mem. in Supp. at 8-9.)  Specifically, Defendants assert that the prison administrative proceeding in which Plaintiff pled guilty to assault and battery on Corporal Hyre is sufficient to apply *res judicata*.  (Mem. in Supp. at 9.)  Defendants also assert that the default judgment entered against Plaintiff on Corporal Hyre's counterclaim of assault and battery is sufficient to apply the doctrine.  (*Id.*)

"*Res judicata* bars litigation of complaints that have already been resolved in order to limit unnecessary costs."  *Petros v. City of Wheeling*, No. CIV A 5:05CV140, 2006 WL 1705911, at *2 (N.D. W. Va. June 16, 2006) (citing *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  For *res judicata* to apply, three elements must be satisfied:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings.  Second, the two actions must involve either the same parties or persons in privity with those parties.  Third, the cause of action identified for resolution in the subsequent proceeding either must be identical

to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Blake v. Charleston Area Med. Ctr., Inc.*, 201 W. Va. 469, 477, 498 S.E.2d 41, 49 (1997); *see also Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990); *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 298-99, 359 S.E.2d 124, 131 (1987).

The Fourth Circuit, at least once, has declined to apply the doctrine of *res judicata* to prison disciplinary hearings. *Shepard v. Eubanks*, 887 F.2d 1081, 1989 WL 117845, at *1 (4th Cir. Sept. 22, 1989) ("It is doubtful that West Virginia would apply the doctrine[] of *res judicata* . . . to prison disciplinary proceedings . . . ."). Specifically, the Fourth Circuit noted the "difficulties with treating prison officials as judicial officers." *Id.*; *see also Cleavinger v. Saxner*, 474 U.S. 193, 203-04 (1985) (finding that the function of a prison disciplinary committee is not a classic adjudicatory function). Therefore, Plaintiff's prison administrative hearing is insufficient to warrant the application of *res judicata* to bar his claims of excessive force against Corporal Hyre, and Plaintiff cannot be said to have waived his claims by pleading guilty in his hearing to assault and battery of Corporal Hyre. (*See* Mem. in Supp., Ex. E.)

On the other hand, a "default judgment is equivalent to a final judgment on the merits." *Stillwell v. City of Wheeling*, 210 W. Va. 599, 606, 558 S.E.2d 598, 605 (2001); *see also Christian v. Sizemore*, 185 W. Va. 409, 412, 407 S.E.2d 715, 718 (1991) (recognizing that " a default judgment may in certain circumstances preclude a second suit based upon the same cause of action under res judicata"); Restatement (Second) of Judgments § 17 cmt. c ("When an issue is actually litigated and determined in an action, the determination is also generally conclusive in any subsequent action between the parties on the same claim."). To determine whether the cause of action is the same, "the appropriate inquiry is whether the new claim arises out of the same

transaction or series of transactions as the claim resolved by the prior judgment." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986).  Here, Plaintiff's claim of excessive force arises out of the same transaction as Corporal Hyre's counterclaim for personal injuries caused from an assault and battery because both stem from the incident occurring on July 1, 2010.  (*See* Complaint at 5; *see also* Def. Corporal Steve Hyre's Counterclaim Against Pl. Anthony Wilson, ECF No. 59.) Therefore, the default judgment entered against Plaintiff on Corporal Hyre's counterclaim is sufficient to apply the doctrine of *res judicata* to Plaintiff's claim of excessive force against Corporal Hyre.

### 3.  Application of Collateral Estoppel to Plaintiff's Claims of Excessive Force

To support their motion for summary judgment, Defendants also assert that the doctrine of collateral estoppel should bar Plaintiff's claims against the remaining Defendants.  (Mot. at 1-2; *see also* Mem. in Supp. at 9-10.)  Specifically, Defendants assert that Plaintiff's prison disciplinary hearing and the default judgment entered against Plaintiff with regards to Corporal Hyre's counterclaim are sufficient to warrant the application of collateral estoppel.  (*Id.* at 10.)

"Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit."  *Conley v. Spillers*, 171 W. Va. 584, 588, 301 S.E.2d 216, 220 (1983).  Collateral estoppel bars a claim if four conditions are met:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *State v. Miller*, 194 W. Va. 3, 6, 459 S.E.2d 114, 117 (1995).  The Supreme Court of

Appeals of West Virginia has summarized the doctrine as such: "But where the causes of action are

not the same, the parties being identical or in privity, the bar extends to only those matters which

were actually litigated in the former proceeding, as distinguished from those matters that might or

could have been litigated therein."  *Lane v. Williams*, 150 W. Va. 96, 100, 144 S.E.2d 234, 236

(1965).

      As mentioned above, the Fourth Circuit, at least once, has declined to apply the doctrine of

collateral estoppel to prison disciplinary hearings.  *Shepard*, 887 F.2d 1081, 1989 WL 117845, at

*1 ("It is doubtful that West Virginia would apply the doctrine[] of . . . collateral estoppel to prison

disciplinary proceedings . . . .").  Plaintiff's prison administrative hearing is insufficient to warrant

the application of collateral estoppel to bar his claims of excessive force against the remaining

Defendants, and Plaintiff cannot be said to have waived his claims by pleading guilty in his hearing

to assault and battery of Corporal Hyre. (*See* Mem. in Supp., Ex. E.)  Furthermore, the issue of the

use of excessive force was not litigated during Plaintiff's disciplinary hearing, and so collateral

estoppel should not control.  *See Shepard*, 887 F.2d 1081, 1989 WL 117845, at *1 ("[C]ollateral

estoppel would not control because the legality of the order Shepard violated was not litigated in the

prior action.").

      Moreover, "[i]n the case of a judgment entered by confession, consent, or default, none of

the issues is actually litigated.  Therefore, the rule [regarding collateral estoppel] does not apply with

respect to any issues in a subsequent action."  Restatement (Second) of Judgments, § 27 cmt. e.

Although a default judgment is a final judgment on the merits, it is not "adequate to support the

application of collateral estoppel."  *Stillwell*, 210 W. Va. at 606, 558 S.E.2d at 605.  Therefore, the

entry of a default judgment against Plaintiff on Corporal Hyre's counterclaim is not sufficient to apply the doctrine of collateral estoppel, and Defendants cannot rely on the doctrine to bar Plaintiff's claims of excessive force.

### 4.    Plaintiff's Claims of Excessive Force Have No Merit

Analysis of a claim for use of excessive force begins with "identification of the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments.  The validity of the prisoner's claim must "be judged by reference to th[is] specific constitutional standard . . . rather than to some generalized 'excessive force' standard." *Graham*, 490 U.S. at 394; *see, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner is to be analyzed under an Eighth Amendment standard).  Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment.  *Whitley*, 475 U.S. at 321-22.  "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992).  "Injury and force . . .  are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 1178.  "'[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. *See, e.g., Hudson*, 503 U.S. at 7-8. The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. *Wilson v. Seiter*, 501 U.S.294, 299 (1991). To prevail on an Eighth Amendment claim of excessive force, a plaintiff "will ultimately have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of a 'good-faith effort to maintain or restore discipline.'" *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1180 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 9). To determine whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force;" (2) "the relationship between the need and the amount of force that was used;" (3) "the extent of the injury;" (4) the threat reasonably perceived by the responsible official; and (5) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321; *see also Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996).

The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of "contemporary standards of decency." *Hudson*, 503 U.S. at 8. In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* (quoting *Wilson*, 501 U.S. at 298). When prison officials use force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated. . . . This is true whether or not [sic] significant injury is evident." *Hudson*, 503 U.S. at 9. However, the Eighth Amendment's prohibition against cruel and unusual punishment does not

extend to "*de minimus* use of physical force provided that the use of force is not the sort repugnant to the conscience of mankind." *Id.* at 10 (internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Id.* at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

### a. Plaintiff's Claims Regarding July 1, 2010

As noted above, Plaintiff claims that on July 1, 2010, he was "jumped" and strapped to a table by Corporal Hyre. (Complaint at 5.) Plaintiff asserts that as a result of the July 1, 2010 attack on him, both he and Corporal Hyre were injured, and that the other guards began to target and harass him because of this incident. (*Id.*) However, Plaintiff's claim has no merit.

The evidence submitted in this case reveals that on July 1, 2010, Corporal Hyre was instructed to move Plaintiff to another cell in another unit. (ECF No. 10, Ex. 1 ("Hyre Aff.") at 1.) After Plaintiff was moved into the hallway, he refused to walk and told officers that he would not move to another cell. (*Id.*) At this time, Corporal Hyre and Officer Hoffman moved to either side of Plaintiff and attempted to escort Plaintiff from the area. (*Id.*) Plaintiff continued to struggle and then began pushing his body into the officers. (*Id.* at 1-2.) To stop Plaintiff from struggling and to prevent injury to him and the officers, Corporal Hyre and Officer Hoffman placed Plaintiff on the floor, and Plaintiff continued to struggle. (*Id.* at 2.) As a result of the struggle, Corporal Hyre received a rotator cuff tear and was off work for four months. (*Id.*) At no time was Plaintiff sprayed with OC spray, and he continued to struggle, yell, threaten officers, and refuse to follow commands after being removed from his cell. (*Id.*) Lieutenant Lanham witnessed Plaintiff's behavior from the counselor's office and noticed that Plaintiff was attempting to stand up and was defying the officers' orders to stop struggling. (ECF No. 10, Ex. 2 ("Lanham Aff.") at 1-2.) At Plaintiff's administrative

hearing for the incident, he stated that he did resist, became angry, and argued with Corporal Hyre. (Memo. in Supp., Ex. 5 ("July 1, 2010 Hearing Report.").)  The correctional hearing officer found Plaintiff guilty based upon Corporal Hyre's incident report and Plaintiff's own testimony.  (*Id.*)

Plaintiff was seen by medical staff on July 1, 2010 after the incident occurred.  Medical staff noted that the back of Plaintiff's elbows were pink with abrasions, but that there was no drainage. Notably, Plaintiff did not file a medical services request for this incident until July 19, 2010.  In this request, he complained that his neck, shoulder, and arm were injured and that his entire arm would go numb.  Plaintiff was seen on August 4, 2010 as a result of this request, and medical staff noted that Plaintiff had a complete range of motion in his arm.  He was given Motrin for the pain.  Plaintiff was seen six days later when he complained of pain at a seven on a ten-point scale, dull pain in his left elbow, and numbness in his hand.  Medical staff noted that Plaintiff had a decreased range of motion in his arm, wrist, and fingers, but that he had no redness or swelling.  Furthermore, an X-ray of Plaintiff's right elbow was taken on August 12, 2010, and this X-ray revealed neither joint effusion nor acute fracture or dislocation.

Although Corporal Hyre and Officer Hoffman placed Plaintiff on the floor, such action was taken because Plaintiff repeatedly attempted to struggle with officers and repeatedly failed to follow Corporal Hyre's instructions during the cell move.  Therefore, with respect to the incident occurring on July 1, 2010, it is clear that the force used was applied in a good-faith effort to maintain or restore discipline and was not used maliciously and sadistically by officers to cause harm to Plaintiff. *Wilkins*, 130 S. Ct. at 1180.

      **b.**    **Plaintiff's Claims Regarding August 3/4, 2010**

As his second claim, Plaintiff asserts that Corporal Smith, Officer Warner, Officer White, and Sergeant Haynes assaulted him during an incident involving the removal of handcuffs from Plaintiff. (Complaint at 4.) According to Plaintiff, Corporal Smith slammed his head into the wall even though he knew Plaintiff's neck was injured, and Officer Warner bent his right arm at an awkward angle. (*Id.*) However, based on the evidence in the case, the undersigned finds that Plaintiff's claim is without merit.

The evidence submitted in this case demonstrates that on the date in question, Plaintiff was subjected to a routine cell search. (Reply, Ex. 1 ("Haynes Aff.") at 1.) During the search, Plaintiff was handcuffed and placed in the hallway with his head against the wall to follow routine procedure. (Reply, Ex. 3 ("Smith Aff.") at 1.) At one point, Plaintiff removed his head from the wall, and Sergeant Smith placed his hand on Plaintiff's back. (*Id.*) Plaintiff became compliant immediately and placed his head on the wall again. (*Id.*) After the search, Plaintiff put his hands through the opening in the cell door to be uncuffed. (*Id.*) After one handcuff was removed, Plaintiff quickly turned around, and Officer Warner held onto the cuff to keep the handcuffs from going inside Plaintiff's cell. (Reply, Ex. 2 ("Warner Aff.") at 1.) Plaintiff apologized and stated that he was trying to make it easier for Officer Warner to uncuff the other cuff. (Haynes Aff. at 1.) Plaintiff then turned around and Officer Warner removed the other cuff. (Warner Aff. at 1.) At no time did Plaintiff complaint that he was in pain or injured because of this incident. (Haynes Aff. at 1; Warner Aff. at 1; Smith Aff. at 1.) The video produced by Defendants corroborates this evidence.[2] Plaintiff

---

[2] Plaintiff alleges that the incident in question occurred on August 4, 2010. However, no video of an incident from August 4 exists. Defendants have produced a video of a cell search of Plaintiff's cell that took place on August 3, 2010 at approximately 11:30 p.m. Therefore, it appears to the undersigned that because this video was very close in time to August 4, 2010, it depicts the incident that Plaintiff refers to in his Complaint.

submitted a medical services request on August 6, 2010, alleging that his neck became worse when his head was pushed into the wall and that his arm hurt after it was bent backwards. However, no services were ordered.

Plaintiff's assertions notwithstanding, there is no evidence to suggest that Sergeant Smith slammed Plaintiff's head into the wall or that Officer Warner bent his arm at an awkward angle. Therefore, with respect to the incident of August 3/4, 2010, the undersigned finds that any force used was applied in a good-faith effort to maintain or restore discipline and was not used maliciously and sadistically to cause harm to Plaintiff. *Wilkins*, 130 S. Ct. at 1180.

### c.        Plaintiff's Claims Regarding August 11, 2010

As his second claim, Plaintiff asserts that on August 11, 2010, officers, including Officer White, attacked him and beat his head into a wall. (Complaint at 4.) However, the undersigned finds that Plaintiff's claim is without merit.

The evidence submitted in this case reveals that on August 11, 2010, Plaintiff was cursing and making threats towards Officer White. (Mem. in Supp., Ex. 1 ("Aug. 11, 2010 White Aff.") at 1.) He refused orders to calm down and was being belligerent towards officers. (*Id.*) To keep the incident from escalating further, Officer White and other officers entered Plaintiff's cell to remove him. (*Id.*) Plaintiff resisted, struggled, and refused orders to leave his cell. (*Id.*) Once he stopped resisting and cursing, he was handcuffed and removed from his cell. (*Id.*) Officer White did not observe any injuries to Plaintiff's face and did not observe any redness or markings on Plaintiff's wrists and ankles. (*Id.* at 2.) Plaintiff did not complaint that he was injured as a result of the incident. (*Id.*) He filed a grievance on August 18, 2010 complaining that Officer White was

unprofessional, but Plaintiff's grievance was denied based on Sergeant Fox's representation that he did not observe any unprofessional conduct from Officer White.  (Complaint, Ex. 11.)

Plaintiff filed a medical services request that same day, alleging that his elbow and neck were in pain and that he could not get up and move around without experiencing a great deal of pain. Medical staff examined Plaintiff on August 11, 2010 following this incident.  Staff noted small amounts of blood draining from Plaintiff's wrists and ankles.  Plaintiff was instructed to clean the areas with soap and water.  Medical staff also noted that these wounds appeared to be self-inflicted.

Plaintiff's assertions notwithstanding, there is no evidence that Officer White and other officers assaulted Plaintiff on August 11, 2010.  Although Officer White and other officers removed Plaintiff from his cell, this was done only after Plaintiff refused to calm down and refused orders to stop struggling and leave his cell.  Furthermore, medical staff determined that any injuries Plaintiff suffered were self-inflicted.  Therefore, with respect to the incident occurring on August 11, 2010, the undersigned finds that the force used was applied in a good-faith effort to maintain or restore discipline and was not used maliciously and sadistically to cause harm to Plaintiff.  *Wilkins*, 130 S. Ct. at 1180.

### d.      Plaintiff's Claims Regarding August 14, 2010

As his final claim, Plaintiff asserts that on August 14, 2010, Officer White assaulted him and sprayed him with OC spray while other officers encouraged Officer White's behavior.  (Complaint at 4.)  According to Plaintiff, Officer White verbally abused him, called in a distress call, and then sprayed him with OC spray.  (Complaint, Ex. 7.)  However, the undersigned finds that Plaintiff's claim is without merit.

The evidence in this case demonstrates that on August 14, 2010, Officer White was walking by Plaintiff's cell when Plaintiff became belligerent and began yelling insults at him.  (ECF No. 10, Ex. 3 ("Aug. 14, 2010 White Aff.") at 1.)  Plaintiff then began spitting at the window of his cell and punching the wall.  (*Id.*)  Officer White ordered Plaintiff to stop punching the wall, but Plaintiff ignored this order and continued to punch the wall.  (*Id.*)  Officer White ordered Plaintiff twice more to stop punching the wall, but Plaintiff ignored these orders as well.  (*Id.*)  Officer White then sprayed two one-second bursts of OC spray to stop Plaintiff from punching the wall.  (*Id.* at 1-2.)

After Officer White sprayed the OC spray, Plaintiff was removed from his cell and was taken to a shower for decontamination from the OC spray.  (*Id.*)  A video submitted by Defendants reveals that Plaintiff was provided with ample time to shower to remove the chemical agent.  Plaintiff was then escorted to see medical staff.  Nurse Healey examined Plaintiff and found that he was in no acute distress; notably, Plaintiff denied any injuries.  (ECF No. 10, EX. 6 ("Aug. 14 Incident Report").)  Nurse Healey also noted some superficial abrasions that required no treatment on Plaintiff's right hand and stated that these were self-inflicted from Plaintiff punching the wall.  (*Id.*)  She included in her report that Plaintiff did not deny that they were self-inflicted.  (*Id.*)  Plaintiff's exchange with Nurse Healey is corroborated by the video submitted by Defendants.  Nurse Healey noted in Plaintiff's file that he was able to move all fingers and did not have any displaced areas.

On August 15, 2010, Plaintiff submitted a medical services request, alleging that he was maliciously attacked by an officer and asking to be seen for vomiting.  He was seen on August 16, 2010 by medical staff, who noted that Plaintiff did not have any limited movement.  Staff also found that Plaintiff had healing scabs on his wrist and ankles.  Plaintiff filed another medical services request that same day, stating that officers lied when they reported that he had injured his hand

punching the wall.  Staff found no medical questions or requests in Plaintiff's submission, but he was seen again on August 17, 2010.  Medical staff noted that Plaintiff had two scabs and some light purple and yellow bruising on his right hand.  They also noted these injuries appeared to be self-inflicted.  Later, on August 20, 2010, medical staff noted that Plaintiff had equal strength in his right and left hands.

Notwithstanding Plaintiff's assertions, there is no evidence to suggest that Officer White or other officers inflicted the injuries to Plaintiff's right hand on August 14, 2010.  While OC spray was released into Plaintiff's cell, such action was taken by Officer White only after Plaintiff ignored orders to stop punching the wall.  Therefore, with respect to the incident on August 14, 2010, the undersigned finds that the force used was applied in a good-faith effort to maintain or restore discipline and was not used maliciously and sadistically to cause harm to Plaintiff.  *Wilkins*, 130 S. Ct. at 1180.

In conclusion, it is pertinent to note that Plaintiff appears to be a disruptive inmate who, while incarcerated, had trouble conforming his behavior to WVDOC expectations.  Indeed, Defendants have noted that Plaintiff is a "reoccurring inmate" who, at the time his complaint was filed, was serving a sentence for grand larceny and illegal possession of a firearm.  (Memo. in Supp. at 1.)  Furthermore, the evidence submitted in this case reveals that Plaintiff has been found guilty of several administrative charges at several administrative hearings and has been involved in numerous altercations with correctional officers.  Based on Plaintiff's history of incarceration, the videos of the August 3/4 incident and August 14 incident, the affidavits, and medical records, it is clear that no genuine issues of triable fact exist.  Therefore, the undersigned finds that Plaintiff cannot prevail on his claims of excessive force.

**B.      *Plaintiff's Claims of Retaliation***

To sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Furthermore, claims of retaliation are treated with skepticism in the prison context. *Cochran v. Morris*, 83 F.3d 1310, 1317 (4th Cir. 1996). Additionally, a plaintiff alleging that government officials retaliated against him in violation of his constitutional rights must demonstrate, *inter alia*, that he suffered some adversity in response to his exercise of protected rights. *ACLU of Maryland, Inc., v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

Here, Plaintiff asserts that he was involved in an altercation with Corporal Hyre on July 1, 2010. (Complaint at 5.) During this altercation, both Plaintiff and Corporal Hyre were injured. In fact, Corporal Hyre sustained an injury that required physical therapy and his absence from work for several months. (Mem. in Supp. at 2.) Plaintiff further asserts that after that incident he was "targeted and harassed" by other staff members, and that several of those incidents resulted in the alleged use of excessive force in violation of his constitutional rights. (Complaint at 5.)

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Oksanen v. Page Mem'l Hosp.*, 912 F.2d 73, 78 (4th Cir. 1990) (summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery). "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations of denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

On August 8, 2011, the undersigned entered a First Order and Notice Regarding Discovery and Scheduling, allowing the parties 120 days to in which to complete and serve all discovery. (ECF No. 66 at 2.)  During this time, Plaintiff failed to conduct any discovery.  Moreover, Plaintiff failed to produce anything in response to the interrogatories and requests for documents put forth by the remaining Defendants.  (*See* Mem. in Supp., Ex. B.)  Instead, Plaintiff's entire response to Defendants' motion is pure argument, and he has failed to produce any evidence to support his claim of retaliation.  His baseless allegations are insufficient to avoid summary judgment.  *See Anderson*, 477 U.S. at 256; *see also Celotex*, 477 U.S. at 322.  Furthermore, Defendants have been granted summary judgment with respect to Plaintiff's claims of excessive force, precluding Plaintiff's argument that the retaliation escalated into the use of excessive force.  For these reasons, Defendants are entitled to summary judgment on Plaintiff's claims of retaliation.

## V.   CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment Regarding All Remaining Claims for All Remaining Defendants (ECF No. 72) is **GRANTED**.  The Clerk is directed to enter a separate judgment in favor of Defendants and strike this case from the active docket of this Court.

IT IS SO ORDERED.

The Court directs the Clerk of the Court to provide a copy of this Memorandum Opinion and Order to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.  The

Court further directs the Clerk of the Court to mail a copy of this Memorandum Opinion and Order to the *pro se* Plaintiff Anthony Ezra Wilson by certified mail, return receipt requested, to his last known address as reflected on the docket.

      **DATED:** July 30, 2012

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE